UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

NORMA JEAN ROGERS )
) 1:12-CV-112
v. )
) Judge Curtis L. Collier
LIFE CARE CENTERS OF )
AMERICA, INC. )

**MEMORANDUM**

Before the Court is Defendant Life Care Centers of America, Inc.'s ("Life Care") motion to dismiss (Court File No. 40) and motion for summary judgment (Court File No. 38). Life Care argues Plaintiff's Title VII claims should be dismissed because Plaintiff failed to allege she filed a charge with the Equal Employment Opportunity Commission ("EEOC"). The Court will **GRANT** Life Care's motion to dismiss (Court File No. 40).

Additionally, Life Care argues summary judgment should be granted in its favor on Plaintiff Norma Jean Roger's ("Plaintiff") gender discrimination claim and her Family and Medical Leave Act ("FMLA") claim because Plaintiff's employment was terminated for a legitimate, non-retaliatory and non-discriminatory reason, which Plaintiff has failed to rebut as pretext. Plaintiff, for her part, responded in opposition (Court File No. 44). Her response, however, was brief and contained no citations to the record or any offered evidence. Accordingly, the Court must **GRANT** Defendant's motion in light of Plaintiff's failure to offer admissible evidence (Court File No. 38). Even had Plaintiff offered such evidence, the arguments made in her response would fail to withstand summary judgment.

I. **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff's complaint contains relatively little in the way of factual allegations. Moreover, as noted above, her response to Life Care's motion for summary judgment is a mere two-and-one-

half pages, contains no citation to the record, and is not appended with any materials. Accordingly, the Court's summary of the facts in this case must rely primarily on Life Care's representations and submitted materials.

Life Care hired Plaintiff as a Certified Nursing Assistant ("CNA") in 2006 (Court File No. 38-1, Rogers Dep, p. 19). On February 4, 2008, Plaintiff took FMLA leave in order to care for her mother (*id.*, pp. 79-81, 89-91) (Court File No. 38-2, Ex. 13). She took FMLA leave in 2009 as well, during which time she received inpatient care for emotional problems (Court File No. 38-1, Rogers Dep., pp. 80, 92-98) (Court File No. 38-2, Exs. 14, 15). Although she submitted a leave of absence request for eighty-five days, she did not take all the requested time (Court File No. 38-1, Rogers Dep., pp. 96-98). The following year, Plaintiff submitted another personal leave request, this one being non-FMLA leave, seeking a leave of absence between June 6 and June 14, 2010. She required the time off due to personal issues with her spouse (*id.*, 99-101). Life Care allowed her this non-FMLA leave.

On September 20, 2010, a patient complained of Plaintiff's conduct. Plaintiff allegedly moved a patient recovering from hip surgery without warning the patient she was about to be moved. The patient complained of unnecessary pain as a result of this relocation. Plaintiff received a one-on-one training after this incident (*id.*, pp. 61-68, Ex. 9) (Court File No. 38-3, Crosson Aff.) (Court File No. 38-4, Martin Aff.) (Court File No. 38-5, Payne Aff.).

On March 11, 2011, Plaintiff met with Phil Kurtz, the Human Resources Director of Life Care of Red Bank, and discussed her pregnancy and anticipated leave of absence later in the summer (Court File No. 38-1, Rogers Dep., pp. 70-72). Kurtz provided her a number of documents necessary to take paid leave and told her everything was in order. He also told her she had "a

2

boatload of days" of paid leave available to her under Life Care policies (*id.*, p. 71). Plaintiff did not submit these documents and never requested leave. On March 16, 2011, Plaintiff also requested a four-day schedule as opposed to the five-day schedule she was currently working (Court File No. 38-2, Ex. 17). The schedule was approved by the facility scheduler the next day (Court File No. 38-1, Rogers Dep., pp. 102-104).

On March 15, 2011, a patient complained about the actions of a CNA, whom Life Care later identified as Plaintiff. Life Care informs the Court whether the underlying event actually occurred, or occurred in the way the patient represented it, is hotly contested. The Court, however, is without Plaintiff's input on this matter. Regardless, Life Care suggests the fact a complaint was made is undisputed, and the Court must take Life Care's representation at face value given Plaintiff's failure to properly respond to Life Care's summary judgment motion.

The events surrounding this complaint transpired as follows. On March 11, 2011, a CNA allegedly entered the patient's room, shook her finger in the patient's face, told the patient to "shut up," and put her hand over the patient's mouth (Court File No. 38-3, Crosson Aff.) (Court File No. 38-4, Martin Aff.). The Night Shift Supervisor investigated who possibly could be the nurse in question (Court File No. 38-4, Martin Aff.). She confirmed with the patient that the individual who allegedly harmed her was not two of the employees who were on duty the night in question. She then took statements from other CNAs to determine whether they had any contact with the patient (Court File No. 38-3, Crosson Aff.) (Court File No. 38-4, Martin Aff.).

The following day, the Director of Nursing began an investigation into the complaint. Pursuant to Life Care's normal procedures, three separate individuals interviewed the patient (Court File No. 38-3, Crosson Aff.) (Court File No. 38-4, Martin Aff.). One of the interviewees showed

3

the patient photographs of seven staff members. The patient identified Plaintiff's picture, although she stated she was not certain Plaintiff was the CNA who harmed her because Plaintiff's hair was different in the photograph (Court File No. 38-3, Crosson Aff.) (Court File No. 38-4, Martin Aff.) (Court File No. 38-5, Payne Aff.). After this identification, the Director and Assistant Director of Nursing interviewed Plaintiff, who denied the allegations but admitted she tended to the patient on the date in question. Plaintiff told the interviewers the patient was crying uncontrollably and Plaintiff tried, without success, to calm the patient (Court File No. 38-3, Crosson Aff.) (Court File No. 38-4, Martin Aff.).

After two more Life Care officials interviewed the patient over the next two days, four officials met to discuss Plaintiff's employment including the Executive Director, the Director of Nursing, the Assistant Director of Nursing, and the Unit Coordinator. The four agreed the patient's allegations were likely true. They consulted with three other officials who agreed. On March 18, 2011, Life Care terminated Plaintiff's employment (Court File No. 38-3, Crosson Aff.) (Court File No. 38-4, Martin Aff.). Plaintiff alleges in her complaint a "Worker's Compensation Tribunal" found Life Care could not prove the patient's claim. However, due again to Plaintiff's failure to present evidence, the Court is unaware the circumstances of this tribunal, what the findings were, or how those findings bear on this proceeding. Life Care attempts, admirably, to contend with this allegation, noting Plaintiff likely refers to an unemployment compensation tribunal of the Tennessee Department of Labor and Workforce Development.

Plaintiff filed the instant action on March 5, 2012 in the Circuit Court of Hamilton County, Tennessee. On April 9, 2012, Life Care removed the case to this court on the basis of federal question jurisdiction. After the scheduling order was in place, Life Care had difficulty obtaining

4

discovery from Plaintiff, eventually requiring Life Care to file a motion to compel. Plaintiff did not respond to this motion to compel, and the magistrate judge granted it (Court File No. 22). Plaintiff failed again to participate in discovery, and Life Care filed a motion to dismiss (Court File No. 23). Plaintiff did not respond to Life Care's motion, but instead filed a motion for "non-suit" (Court File No. 25). Based on Plaintiff's dilatory prosecution of this case, the Court ordered Plaintiff to show cause why this action should not be dismissed with prejudice (Court File No. 28). Plaintiff subsequently moved to withdraw her motion for non-suit and submitted an affidavit explaining Plaintiff had been out of contact with her counsel but would remain in contact in the future (Court File Nos. 30, 31). The Court granted the motion to withdraw Plaintiff's motion for non-suit, and denied Life Care's motion to dismiss (Court File No. 32). The Court, however, awarded Life Care attorney's fees as a sanction for Plaintiff's conduct. Life Care then filed the instant motion for summary judgment and motion to dismiss.

## II. STANDARD OF REVIEW

### A. Motion to Dismiss

A Rule 12(b)(6) motion should be granted when it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 405 (6th Cir. 1998) (citation omitted). For purposes of this determination, the Court construes the complaint in the light most favorable to the plaintiff and assumes the veracity of all well-pleaded factual allegations in the complaint. *Thurman v. Pfizer, Inc.*, 484 F.3d 855, 859 (6th Cir. 2007). The same deference does not extend to bare assertions of legal conclusions, however, and the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

5

The Court next considers whether the factual allegations, if true, would support a claim entitling the plaintiff to relief. *Thurman*, 484 F.3d at 859. Although a complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief," this statement must nevertheless contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility as explained by the Court "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

**B. Motion for Summary Judgment**

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The Court views the evidence, including all reasonable inferences, in the light most favorable to the non-movant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). However, the non-movant is not entitled to a trial based merely on its allegations; it must submit

significant probative evidence to support its claims. *See Celotex*, 477 U.S. at 324; *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Should the non-movant fail to provide evidence to support an essential element of its case, the movant can meet its burden of demonstrating no genuine issue of material fact exists by pointing out such failure to the court. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

At summary judgment, the Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). If the Court concludes a fair-minded jury could not return a verdict in favor of the non-movant based on the record, the Court should enter summary judgment. *Id.* at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## III. DISCUSSION

### A. Motion to Dismiss

Life Care seeks dismissal of Plaintiff's Title VII claims because she failed to allege she filed a Charge of Discrimination with the EEOC. The filing of such a charge is a prerequisite to bringing a Title VII claim.[1] 42 U.S.C. § 2000e-5(e)(1). Plaintiff responded to Life Care's motion (Court File No. 45), arguing her Title VII claims should not be barred because she also filed claims pursuant to the Tennessee Human Rights Act ("THRA"), which she contends does not require the filing of an EEOC complaint.

Although THRA claims are analyzed under the same standards as Title VII, *Day v. Krystal*

---

[1] Whether this constitutes a condition precedent or a jurisdictional prerequisite is an issue still in flux following the Supreme Court's decision in *Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006). *See E.E.O.C. v. Care Ctrs. Mgmt. Consulting, Inc.*, – F. Supp. 2d. –, No. 2:12–CV–207, 2013 WL 1811973, at *2 n.2 (E.D. Tenn. Apr. 29, 2013). The distinction is immaterial in this case.

7

*Co.*, 471 F. Supp. 2d 874, 882-83 (E.D. Tenn. 2007), they are independent claims, *Parker v. Warren Cnty. Util. Dist.*, 2 S.W.3d 170, 172-73 (Tenn. 1999) ("[O]ur legislature [] intended the THRA to be coextensive with federal law. We, however, are neither bound by nor limited by the federal law when interpreting our state's anti-discrimination statute.") (internal quotation marks and citations omitted). Filing a state law claim does not render a prerequisite to a federal claim inoperative. Nor does Plaintiff's brief explain how it could. Accordingly, Defendant's motion will be **GRANTED** and Plaintiff's Title VII claims will be **DISMISSED**.

### B. Motion for Summary Judgment

#### 1. Failure to Submit Evidence

Life Care's motion for summary judgment is accompanied by copies of depositions and affidavits, and the body of the supporting memorandum contains numerous citations to the record. Plaintiff, however, submitted a two-and-one-half-page response, baldly asserting certain facts are "undisputed" and that those facts create "substantial and genuine issues of material fact[]" for a jury to decide (Court File No. 44). The response is not accompanied by any cited materials nor does it cite to any materials in the record.

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Rule 56(c) provides the following requirements relevant here.

> (1) Supporting Factual Positions. A party asserting that a fact cannot be or is genuinely disputed *must support* the assertion by:
> (A) *citing to particular parts of materials in the record*, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that *the materials cited* do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

8

Fed. R. Civ. P. 56(c)(1)(A), (B) (emphasis added). Accordingly, Plaintiff *must* support her contention a genuine issue of material fact exists, or that some facts are undisputed, with citations to the record, or at the very least demonstrate with similar citations why Life Care's cited materials do not call for summary judgment. *See Emerson v. Novartis Pharm. Corp.*, 446 F. App'x 733, 736 (6th Cir. 2011) ("[T]he district court cannot be faulted for not doing the work of plaintiff's counsel and undertaking a detailed review of the entire record. A district court is not required to 'search the entire record to establish that it is bereft of a genuine issue of material fact.'") (quoting *Street*, 886 F.2d at 1479-80). As previously noted, Plaintiff is not entitled to a trial based merely on her allegations; Plaintiff must submit significant probative evidence to support her claims. *See Celotex*, 477 U.S. at 324; *McLean*, 224 F.3d at 800. Plaintiff failed to provide evidence to support her case, and Life Care met its burden of demonstrating no genuine issue of material fact exists by pointing out such failure to the Court in its reply. *See Street*, 886 F.2d at 1479. Without a supported response, the Court, constrained by the Federal Rules, must **GRANT** Defendant's motion.

### 2. Merits

Even considering the merits of Plaintiff's argument, summary judgment must be granted. Plaintiff's discrimination claims are all based on indirect evidence.[2] Accordingly, for all those claims, Plaintiff proceeds under the *McDonell Douglas* framework. *See Donald v. Sybra, Inc.*, 667

---

[2] Of course, as the Court has repeatedly noted, Plaintiff does not rely on *any* evidence. However, the three arguments she does make–the temporal proximity between her termination and her leave request, Kurtz's comment on the number of days of leave she had at her disposal, and the fact the patient complaint ostensibly justifying her termination was unfounded–are all based on circumstantial evidence. *See Payne v. Goodman Mfg. Co., L.P.*, 726 F. Supp. 2d 891, 905 (E.D. Tenn. 2010) ("Direct evidence of intentional discrimination includes an acknowledgment by an employer of discriminatory intent. Circumstantial evidence of discrimination includes ambiguous statements, suspicious timing, and instances in which similarly situated . . . employees received systematically better treatment.").

9

F.3d 757, 762 (6th Cir. 2012) (holding *McDonnell Douglas* applies to both the interference and retaliation theories under the FMLA); *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 706 (6th Cir. 2006) (noting Title VII single-motive claims are analyzed under *McDonnell Douglas*). Under the *McDonnell Douglas* framework, the plaintiff carries the initial burden of establishing a *prima facie* case of discrimination. *Vaughn v. Watkins Motor Lines, Inc.*, 291 F.3d 900, 906 (6th Cir. 2002). If the plaintiff makes this showing,

> the burden then shifts to the defendant to set forth a legitimate, non-discriminatory [or non-retaliatory] reason for the adverse employment action. If the defendant carries this burden, the plaintiff must then prove by a preponderance of the evidence that the defendant's proffered reasons were not its true reasons, but merely a pretext for illegal discrimination[ or retaliation].

*Adair v. Charter Cnty. of Wayne*, 452 F.3d 482, 489 (6th Cir. 2006) (citations omitted).

### i. Prima facie case and non-discriminatory rationale

As an initial matter, Plaintiff asserts three different claims: an FMLA violation, gender discrimination, and pregnancy discrimination. The bulk of Plaintiff's complaint focuses on her FMLA claim. It is unclear whether Plaintiff alleges FMLA interference or FMLA retaliation. An "interference" claim arises under 29 U.S.C. § 2615(a)(1), "which makes it 'unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise' any FMLA provision." *Donald*, 667 F.3d at 761 (quoting 29 U.S.C. § 2615(a)(1)). "If an employer takes an employment action based, in whole or in part, on the fact that the employee took FMLA-protected leave, the employer has denied the employee a benefit to which he is entitled." *Wysong v. Dow Chem. Co.*, 503 F.3d 441, 447 (6th Cir. 2007). To establish a *prima facie* case of interference, Plaintiff must show

> (1) she was an eligible employee; (2) the defendant was an employer as defined under the FMLA; (3) the employee was entitled to leave under the FMLA; (4) the

employee gave the employer notice of her intention to take leave; and (5) the employer denied the employee FMLA benefits to which she was entitled.

*Donald*, 667 F.3d at 761 (quoting *Killian v. Yorozu Auto. Tenn., Inc.*, 454 F.3d 549, 556 (6th Cir. 2006)).

An FMLA retaliation claim, on the other hand, is based on 29 U.S.C. § 2615(a)(2), which "prohibits an employer from 'discharg[ing] or in any other manner discriminat[ing] against any individual for opposing any practice made unlawful by this subchapter.'" *Id.* (quoting 29 U.S.C. § 2615(a)(2)). To establish a *prima facie* case of FMLA retaliation, Plaintiff must demonstrate

> (1) she was engaged in an activity protected by the FMLA; (2) the employer knew that she was exercising her rights under the FMLA; (3) after learning of the employee's exercise of FMLA rights, the employer took an employment action adverse to her; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action.

*Id.* (quoting *Killian*, 454 F.3d at 556).

Plaintiff also alleges gender and pregnancy discrimination. Although the Court has dismissed Plaintiff's Title VII claims, her THRA claims remain. "[T]he Tennessee Supreme Court has repeatedly recognized the application of federal law to THRA cases." *Day*, 471 F. Supp. 2d at 882-83 (citing *Parker*, 2 S.W.3d at 172-73 (recognizing the Tennessee legislature intended the THRA "to be coextensive with federal law")); *see also Frizzell v. Southwest Motor Freight*, 154 F.3d 641, 646 (6th Cir. 1998)). The Court therefore analyzes Plaintiff's claims "under the relevant federal standards." *Day*, 471 F. Supp. 2d at 883.

Plaintiff appears to list gender and pregnancy discrimination as separate claims. Plaintiff may, however, be alleging one claim of gender discrimination based on her pregnancy. Under Title VII and the THRA, it is an unlawful discriminatory practice for an employer to discharge an individual because of her pregnancy. 42 U.S.C. §§ 2000e-2(a)(1), 2000-e(k); Tenn. Code Ann. §

11

4-21-401(a)(1); *Spann v. Abraham*, 36 S.W.3d 452, 463-64 (Tenn. Ct. App. 1999). Because Congress enacted the PDA to amend Title VII to include discrimination on the basis of pregnancy, such claims are analyzed in the same manner as any other Title VII sex discrimination claim. *Boyd v. Harding Acad.*, 88 F.3d 410, 413 (6th Cir. 1996). Accordingly, it is immaterial for the purposes of this motion whether Plaintiff alleges two separate claims of gender discrimination or one claim of gender discrimination based on her pregnancy. To establish a prima facie case of gender discrimination, the plaintiff must demonstrate (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the job; and (4) her employer treated similarly situated employees outside the protected class more favorably or her position was filled with a person outside of her protected class. *Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 762 (6th Cir. 2006); *Warfield v. Lebanon Corr. Inst.*, 181 F.3d 723, 728-29 (6th Cir. 1999).

Although Life Care does not concede Plaintiff has sufficiently established a *prima facie* case for any of her claims, Life Care focuses its brief on its legitimate, non-discriminatory reason for terminating Plaintiff: the patient complaint lodged against Plaintiff. The Court has already concluded this motion must be granted on the basis of Plaintiff's failure to offer any evidence, or cite to any evidence in the record. However, because the Court addresses her arguments in the alternative, it will assume *arguendo* she established a *prima facie* case of FMLA interference, FMLA retaliation, gender discrimination, and pregnancy discrimination.

### ii. Pretext

Life Care has offered evidence of a legitimate, non-discriminatory reason for terminating Plaintiff, and the burden shifts to Plaintiff to demonstrate pretext. In order to show pretext, Plaintiff

must establish that (1) Life Care's proffered reasons for adverse actions had no factual basis; (2) Life Care's proffered reasons did not actually motivate its actions; or (3) Life Care's proffered reasons were insufficient to motivate the actions. *See Adair*, 452 F.3d at 491. Plaintiff makes three arguments, which could be construed as impeaching Life Care's purported non-discriminatory and non-retaliatory explanation: (1) Life Care fired Plaintiff shortly after she made FMLA leave request; (2) Kurtz, acting in his capacity as a Human Resources officer for Life Care, commented on how many days of leave Plaintiff had at her disposal; and (3) the patient complaint lodged against Plaintiff was unfounded.[3] Each of these arguments fails. Because the Court concludes Plaintiff fails to establish pretext, it need not distinguish between Plaintiff's separate claims of discrimination.

### (a) Temporal Proximity

Plaintiff's first argument relies on the temporal proximity between her request for FMLA leave, which occurred on March 11, 2011, and her termination, which occurred on March 18, 2011. Plaintiff's argument regarding temporal proximity might have been persuasive if Life Care's argument focused solely or even primarily on Plaintiff's *prima facie* case. Although not a settled question, some courts have held the time period at issue here is sufficient, on its own, to establish a *prima facie* case of discrimination. *See Hamilton v. Starcom Mediavest Grp., Inc.*, 522 F.3d 623, 629 ("[T]here is a consensus that proximity alone generally will not suffice where the adverse action

---

[3] In her response, Plaintiff also argues "[i]t is also undisputed that Plaintiff worked for the Defendant for substantial period of time and was never terminated in the past." It is unclear to the Court how this could demonstrate pretext or, for that matter, discrimination or retaliation. As a matter of logic, nearly every plaintiff complaining of discriminatory or retaliatory termination will have been employed for a period and never before terminated. In fact, as discussed below, Plaintiff's past requests for FMLA leave make it *less* likely Life Care discriminated or retaliated against her for taking FMLA leave. To the extent she argues the fact this incident involved her pregnancy shows discriminatory intent, the Court concludes she has failed to demonstrate pretext for the reasons stated below.

13

occurs more than a few months . . . after the protected conduct."); *Asmo v. Keane, Inc.*, 471 F.3d 588, 594 (6th Cir. 2006) ("This was within two months of October 2001, when Santoro learned that Asmo was pregnant. This temporal proximity is sufficient to establish a link between Asmo's pregnancy and her termination for the purposes of a prima facie case."); *Nguyen v. City of Cleveland*, 229 F.3d 559, 566-67 (6th Cir. 2000) ("[P]revious cases that have permitted a prima facie case to be made based on the proximity of time have all been short period of time, usually less than six months.") (quoting *Parnell v. West*, 114 F.3d 1188, 1997 WL 271751 (6th Cir. May 21, 1997)). However, as noted above, the Court presumes for this motion that Plaintiff successfully established such a case.

After the burden shifted to Life Care to establish a legitimate, non-discriminatory or non-retaliatory reason for its actions, Life Care pointed to the patient complaint lodged against Plaintiff. Temporal proximity may, in certain cases, be sufficient on its own to establish a *prima facie* case. It is not, however, sufficient on its own to establish pretext. *See Donald*, 667 F.3d at 763 ("[T]he law in this circuit is clear that temporal proximity cannot be the sole basis for finding pretext.) (quoting *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 317 (6th Cir. 2001) ("[T]emporal proximity is insufficient in and of itself to establish that the employer's nondiscriminatory reason for discharging an employee was in fact pretextual.")); *see also Asmo*, 471 F.3d at 598 (concluding temporal proximity established the plaintiff's *prima facie* case but also noting temporal proximity alone cannot prove pretext, although it can be used as "indirect evidence" to support an employee's claim of pretext). Moreover, as Defendant notes, the Sixth Circuit has held, where an FMLA plaintiff has made multiple requests for FMLA leave, the Court should consider the first such FMLA request for temporal proximity purposes. *See Hall v. Ohio Bell Tel. Co.*, – F. App'x –, 2013 WL

14

2986991, at *7 (6th Cir. June 17, 2013) ("[T]he better measurement of temporal proximity is three years—the time between Hall's first FMLA request and her termination—because the earlier FMLA investigations did not result in any adverse employment action.").

Plaintiff's temporal proximity argument fails. As discussed below, the Court concludes Plaintiff's other arguments, were they supported, would not withstand summary judgment. Accordingly, even if Plaintiff had offered evidence establishing this temporal proximity, she would be relying on temporal proximity alone to demonstrate pretext. In addition, Plaintiff requested and received FMLA leave years prior to the incident giving rise to this action. In such a case, a temporal proximity argument loses most, if not all, the weight it would otherwise carry. *See Hall*, 2013 WL 2986991, at *7. For these reasons, Plaintiff's first argument does not establish pretext.

### (b) Ambiguous comments

Plaintiff's second argument relies on the ambiguous statement made by Phil Kurtz in regard to Plaintiff's leave time. Plaintiff refers to Kurtz's surprise that Plaintiff had "a boatload of days" left to utilize for leave. Plaintiff discussed this incident during deposition.

> PLAINTIFF: I went in on March the 11th, 2011, after a payday meeting and talked to Phil Kurtz about taking my FMLA to go ahead and get off work because I was having trouble with my pregnancy.
> And when I talked to him that day he understood. He said everything was fine and that he was going to fill my FMLA paperwork out. I could go ahead and take it to my doctor and have my doctor sign off on whichever date he wanted me to take off work.
> But Phil said he would go ahead and do the June the 25th on the paperwork because my due date was July the 9th and the doctor had already said he was going to take the baby two weeks early. But Phil said I could take it back to the doctor and he could sign off on it when he wanted me to stop working.
> And Phil said everything was in order. He talked about my FMLA, the days I would have off, and my pay and everything. And when he filled that out and was seeing how many days I would have on FMLA, his exact words was you have a boatload of days.

15

| | |
|---|---|
| COUNSEL: | Okay. And those -- when he said you had a boatload of days, he was talking about like vacation days? |
| PLAINTIFF: | I had vacation days and sick days from the sick bank built up in my account. |
| COUNSEL: | Okay. And so when he was referring to a boatload of days, that was the kind of days he was talking about? |
| PLAINTIFF: | Yeah, that I would be able to get paid for my FMLA. |

(Court File No. 38-1, Rogers Dep., pp. 70-71). Plaintiff further described Kurtz's demeanor when he discussed her available leave.

| | |
|---|---|
| COUNSEL: | . . . And you said earlier that Mr. Kurtz added up those days and said something along the lines that you have a boatload of days, did you say? |
| PLAINTIFF: | That was his exact words. |
| COUNSEL: | Okay. |
| PLAINTIFF: | And he went over this paper twice just to make sure because he didn't think I would have that many days. |
| COUNSEL: | Okay. So did - - when Mr. Kurtz added up these days and told you you had a boatload of days, did he seem angry about it? |
| PLAINTIFF: | No. He seemed shocked. |
| COUNSEL: | Okay. Did he seem happy for you? |
| PLAINTIFF: | No, just nonchalant. I don't know how else to put it. |
| COUNSEL: | Okay. But he was surprised at how many days you had, is that what you're saying, seemed to be? |
| PLAINTIFF: | Yeah. He acted surprised, yeah. |
| COUNSEL: | Okay. Now did - - but he didn't seem angry about it; is that what you're saying? |
| PLAINTIFF: | No. |

16

> COUNSEL: Okay. But you also - - you also - - you don't agree that he was happy that you had this many paid days?
>
> PLAINTIFF: No.

(*Id.*, pp. 78-79).

This incident fails to establish pretext. Plaintiff's own description of the encounter demonstrates Kurtz was understanding, provided her the necessary documents, told her everything was in order, and, in that context, noted she had a "boatload" of days at her disposal. Plaintiff's brief response to Life Care's motion fails to establish how such a comment could be taken as demonstrating an FMLA violation. Plaintiff argues Kurtz "commented on how many days Defendant was going to have to pay her" (Court File No. 44). However, based on Plaintiff's account, it appears Kurtz was merely informing Plaintiff she had a large number of days she could use. When he calculated the number, he expressed "surprise" she had so many days available to her but was not angry. Plaintiff even described his manner as "nonchalant." Moreover, Kurtz provided her information regarding how she could take leave sooner if her doctor found it to be appropriate. Given the context of the conversation, and Plaintiff's own discussion of it, "[t]here is no subtext of animus in [Kurtz's] comment." *Donald*, 667 F.3d at 763 (concluding an alleged comment by the store manager suggesting the plaintiff go on disability was insufficient to establish pretext in an FMLA case). Because "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to survive summary judgment[,]" *id.* (internal quotation marks omitted), Kurtz's comment does not establish pretext.

### (c) Factual basis for complaint

Finally, Plaintiff's third argument focuses on the factual basis of the patient complaint that

Life Care offers as the non-discriminatory and non-retaliatory basis for her termination. Because the patient's allegations were "unfounded and unproven," Plaintiff argues "there is more than enough doubt behind the motive of the Defendant's termination of the Plaintiff" (Court File No. 44). However, "[w]hen an employer reasonably and honestly relies on particularized facts in making an employment decision, it is entitled to summary judgment on pretext even if its conclusion is later shown to be 'mistaken, foolish, trivial, or baseless.'" *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 531 (6th Cir. 2012) (quoting *Chen v. Dow Chem. Co.*, 580 F.3d 394 (6th Cir. 2009)). "[T]he 'key inquiry . . . is 'whether the employer made a reasonably informed and considered decision before taking' the complained-of action.'" *Id.* (quoting *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584 (6th Cir. 2007)). In order to avoid summary judgment, a "'plaintiff must produce sufficient evidence from which the jury could reasonably reject [the defendants'] explanation and infer that the defendants . . . did not honestly believe in the proffered nondiscriminatory reason for its adverse employment action.'" *Id.* (quoting *Braithwaite v. Timken Co.*, 258 F.3d 488, 493–94 (6th Cir.2001)).

Plaintiff has produced nothing, nor pointed to any reason, which would suggest Life Care did not honestly believe in the proffered reason for its action. Plaintiff merely argues the patient's complaint was false, or that she was not the proper subject of the complaint. Such an argument is irrelevant and does not establish discriminatory or retaliatory pretext. *See Donald*, 667 F.3d at 763 (holding the plaintiff's argument her employer's non-discriminatory basis for her termination–an series of alleged thefts–was unfounded, "is irrelevant" based on the honest belief rule). Life Care based its conclusion on a thorough investigation which involved a photographic identification, multiple interviews of the complainant patient, confirmation Plaintiff had some interaction with the patient, and the interviewers' collective conclusion the patient's claim was true (Court File No. 38-3,

18

Crosson Aff., ¶ 9) (Court File No. 38-4, Martin Aff., ¶ 9). *See Hall*, 2013 WL 2986991, at *9 (listing facts discovered as a result of an employer investigation, which supported summary judgment in the employer's favor). Moreover, the only evidence before the Court suggests Life Care came to this determination pursuant to its normal procedures (Court File No. 38-3, Crosson Aff., ¶ 7) (Court File No.38-4, Martin Aff., ¶ 7). *See Hall*, 2013 WL 2986991, at *9 (noting the employer "almost always" terminates an employee for the reason the employer claimed it terminated the plaintiff); *Donald*, 667 F.3d at 763 (noting the employer "followed its own protocol"). The alleged "Workers Compensation Tribunal" also fails to impeach this conclusion because Plaintiff relies on it only to establish the complaint was false or unfounded, which is immaterial under the honest belief rule. Given no evidence on which the Court could find these "particularized facts" do not constitute the basis for Plaintiff's termination, the Court concludes Plaintiff's argument fails to withstand summary judgment.

Accordingly, even were Plaintiff's response properly supported, the Court would still **GRANT** Life Care's motion for summary judgment.

## IV. CONCLUSION

For the foregoing reasons, the Court will **GRANT** Life Care's motion to dismiss (Court File No. 40) and motion for summary judgment (Court File No. 38).

**An Order shall enter.**

/s/
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**